UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MICHELLE S.,[1]

                Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

Case No.: 3:18-cv-01595-AC

OPINION AND ORDER

MERRILL SCHNEIDER
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, Oregon 97232
    Of Attorney for Plaintiff,

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600

LISA GOLDOFTAS
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
    Of Attorney for Defendant

---

[1] In the interest of privacy, this opinion and order ("O&O") uses only the first name and the initial of the last name of the non-governmental party in this case.

OPINION AND ORDER - 1

**ACOSTA**, Magistrate Judge:

Michelle S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

*Procedural Background*

Plaintiff applied for DIB on December 4, 2013, alleging a disability onset date of September 30, 2009 due to degenerative disc disease with lumbar radiculitis; bilateral carpal tunnel syndrome; conductive hearing loss in both ears; asthma; depression; anxiety; and chronic fatigue. (Tr. 287-88, 426, 456.) She applied for SSI on January 21, 2014. (Tr. 289-94.) Her applications were denied initially and upon reconsideration. (Tr. 195-211.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and administrative hearings were held on January 13, 2017 and July 18, 2017. (Tr. 40-68, 212-13.) ALJ Marilyn Mauer issued a decision finding Plaintiff not disabled on August 14, 2017. (Tr. 15-33.) The Appeals Council denied Plaintiff's request for review on June 27, 2018, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) This appeal followed.

*Factual Background*

Born in March 1969, Plaintiff was 40 years old on her alleged onset date. (Tr. 287.) She has a GED. (Tr. 315.) Plaintiff previously worked as a security guard, a manager in a group home, and as a medication aide at an assisted living facility. (Tr. 316.)

\ \ \ \ \

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not disabled.

\\\\\

\\\\\

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

*ALJ's Decision*

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in SGA since the alleged onset date, September 30, 2009. (Tr. 17.) At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, mild to moderate narrowing at L5-S1; fibromyalgia; asthma; morbid obesity; anxiety disorder; depression; and post-traumatic stress disorder traits. (Tr. 18.) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ next determined Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [Plaintiff] can stand for up to 4 hours, walk for up to 2 hours, and sit for up to 6 hours in an 8-hour workday for a combined total of 8 hours of activity. She can occasionally climb ladders, ropes, and scaffolds. She can frequently climb ramps and stairs. She can occasionally twist and turn her trunk. She can occasionally stoop, crouch, crawl and kneel. She can understand, remember and apply information consistent with the completion of both simple and detailed tasks in a routine setting with occasional exposure to inhaled irritants, frequent exposure to hazards, no teamwork assignments and no public contact.

(Tr. 20.) At step four, the ALJ determined Plaintiff was unable to perform her past relevant work. (Tr. 31.) At step five, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, including photocopy machine operator, collate operator, and marker. (Tr. 32.) The ALJ found that if Plaintiff had the additional limitation to frequent handling or fingering, she could perform the representative occupations of addresser, document preparer, and cutter-paster. (Tr. 32-33.) Accordingly, the ALJ concluded Plaintiff was not disabled under the Act. *Id.*

*Discussion*

Plaintiff argues the ALJ erred by: (1) rejecting her subjective symptom testimony; (2) improperly evaluating the medical evidence; (3) rejecting the lay witness testimony; and (4) formulating an incorrect RFC.

I. Plaintiff's Subjective Symptom Testimony

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for rejecting her subjective symptom testimony. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[2] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

Plaintiff testified that she could sit for only ten-to-fifteen minutes before her right leg becomes numb and she experiences severe back pain. (Tr. 59.) She also testified she could stand for about fifteen-to-twenty minutes and walk for half an hour before needing to sit down. (Tr. 60.) Plaintiff stated that she has problems with hand strength and often drops things. *Id.* On an average day, Plaintiff experiences pain in her back, legs, and arms. (Tr. 63.) She also testified that she has a hard time concentrating and dealing with people due to her mental health issues. (Tr. 64.) Plaintiff alleged that she was completely disabled by her symptoms and limitations. (Tr. 315.)

---

[2] On March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility" and superceded SSR 96-7p. The ALJ's decision in this case issued August 14, 2017. SSR 16-3p explains that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." SSR-16-3p, *available at* 2017 WL 5180304, *13 n.27 (Oct. 25, 2017). Therefore, the court applies SSR 16-3p to the evaluation of Plaintiff's symptom testimony.

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony regarding her mental and physical symptoms. (Tr. 30.) First, the ALJ found Plaintiff's alleged limitations in concentration and dealing with people were not supported by the objective medical evidence. *Id.* When evaluating a claimant's subjective symptom testimony, an ALJ may consider consistency with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); Social Security Regulation ("SSR") 16-3p, *available at* 2017 WL 5180304, at *7-8 (Oct. 25, 2017). When coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197–98 (9th Cir. 2004). However, a lack of objective medical evidence may not form the ALJ's sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")).

Here, the ALJ noted that Plaintiff's mental status examinations were routinely within normal limits and therefore failed to support her allegations of extreme mental limitations. (Tr. 26.) For example, an examination in February 2015 found Plaintiff's affect was bright and her mood appropriate. (Tr. 662.) Examining psychologist Paul Stoltzfus, Psy.D, performed a psychological exam in February, 2017 and noted few abnormal findings. (Tr. 774-79.) Dr. Stoltzfus concluded Plaintiff was "able to function in the community" and "able to function socially" despite her report that she "can't work now mostly because she doesn't like to 'deal with people.'" (Tr. 775, 779.) It was reasonable for the ALJ to conclude that the medical evidence of

OPINION AND ORDER - 7

Plaintiff's psychological functioning did not support her allegations of debilitating mental impairments.

The ALJ also noted that objective examination findings were inconsistent with Plaintiff's alleged physical limitations. (Tr. 29-30.) For example, MRI imaging found no neurological defects and a 2017 consultative physical examination revealed normal gait, no muscle atrophy, normal sensation and reflexes, normal strength, and a negative fibromyalgia screening. (Tr. 30, 763-65); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (an ALJ may consider mild findings on MRIs and X-rays in discounting the claimant's testimony as to her back pain). On this record, it was reasonable for the ALJ to infer that Plaintiff was less limited than alleged in her testimony. *Burch*, 400 F.3d at 681.

The ALJ next found that Plaintiff's alleged limitations conflicted with her activities. (Tr. 30.) Activities of daily living may discount a claimant's testimony in two ways: (1) where a claimant is able to perform activities indicating capacities that are transferrable to a work setting; or (2) where a claimant's activities contradict her symptom testimony. *Molina*, 674 F.3d at 1113. The Ninth Circuit has consistently reiterated, hower, that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. In other words, a "claimant need not vegetate in a dark room in order to be eligible for benefits." *Molina*, 674 F.3d at 1112-13 (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (internal quotation marks omitted)). Further, where an ALJ relies on contradictions between a claimant's activities and her symptom testimony, the ALJ must identify "specific conflicts with [the claimant's] reported limitations." *Trevizo*, 871 F.3d at 682.

Here, the ALJ found Plaintiff "was able to engage in activities that were inconsistent with the degree of pain and limitation she alleged." (Tr. 30.) For example, the ALJ noted that while

Plaintiff stated she could not be around other people, she attended water aerobics classes and began dating during the relevant period. (Tr. 26-27, 677, 711.) Despite her allegations that she had difficulty concentrating, Plaintiff was also learning to play guitar. (Tr. 28, 747.) Further, the ALJ noted that Plaintiff was "doing a lot of work to raise her grandson," rode a bike, and walked four-to-six miles daily, which was arguably inconsistent with her allegations of disabling pain and fatigue. (Tr. 30, 677, 702, 713, 776.) The ALJ also concluded that Plaintiff's allegation that she needed to rest for 20 minutes every half mile was inconsistent with her testimony that it took her three hours to walk five miles. (Tr. 62, 340.) On this record, Plaintiff's activities constitute a clear and convincing reason for rejecting her subjective symptom testimony. *Molina*, 674 F.3d at 1113. While susceptible to multiple interpretations, the ALJ's interpretation of the evidence was rational and, therefore, must be upheld. *Burch*, 400 F.3d at 679.

As a third reason for rejecting her testimony, the ALJ found Plaintiff managed her symptoms with conservative means. (Tr. 29-30.) Evidence of conservative treatment is sufficient to discount an individual's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Here, Plaintiff stated in June 2013 she did not want mental health counseling, and that medication was helping her depression. (Tr. 436.) Plaintiff also reported that being busy helped curb her anxiety; increased activity helped with her depression; and walking improved her general mental health. (Tr. 30, 436-37, 675.) Plaintiff's pain was also ameliorated with medications such as Tramadol, Gabapentin, Flexeril, Cymbalta, and Naproxen. (Tr. 29, 446, 546, 679.) Because Plaintiff's mental and physical symptoms were well-managed with conservative means, the ALJ reasonably concluded that they were not as disabling as alleged in Plaintiff's testimony. *Parra*, 481 F.3d at 750-51. The ALJ thus provided a clear and convincing reason to reject Plaintiff's testimony. *Reddick*, 157 F.3d at 722.

In sum, the ALJ provided legally sufficient reasons for rejecting Plaintiff's testimony.

II. Medical Opinion Evidence

Plaintiff next argues that the ALJ improperly rejected the opinion of treating physician AnnMarie Overholser, M.D., treating mental healthcare provider Kelly Wheeler, LCSW, examining psychologist Paul Stolzfus, Psy.D., consultative examining physician Raymond Nolan, M.D., Ph.D., and consultative Agency physicians Dorothy Anderson, Ph.D., and Bill Hennings, Ph.D. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick*, 157 F.3d at 725). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

1. AnnMarie Overholser, M.D., and Kelly Wheeler, LCSW

Dr. Overholser provided a medical source statement and opined that Plaintiff was unable to work 40 hours per week and would need to change positions at will. (Tr. 639.) Ms. Wheeler concurred, finding Plaintiff had depression, asthma, low back pain, fibromyalgia, anxiety, fatigue, and limitations in concentration, memory, lifting, standing, walking, bending, sitting, reaching, grasping, breathing, sleeping, and vision. (Tr. 639-40.) Dr. Overholser and Ms. Wheeler also found Plaintiff was unable to continue her previous work. *Id.* She needed to change position at will, have adequate rest, and avoid interaction with crowds and the public. *Id.* Dr. Overholser and Ms. Wheeler each concluded that Plaintiff was permanently unable to participate in a full 40-hour workweek. *Id.*

The opinion of Dr. Overholser and Ms. Wheeler was contradicted by state Agency physicians Neal Berner, M.D., and Peter Bernardo, M.D., who reviewed the record and found Plaintiff was capable of sustaining full-time employment with some limitations. (Tr. 134-36, 168-70.) The ALJ was therefore required to provide specific, legitimate reasons for rejecting the opinions of Ms. Wheeler and Dr. Overholser. *Ghanim*, 763 F.3d at 1161.

The ALJ gave Dr. Overholser and Ms. Wheeler's opinion some weight but rejected the limitation that Plaintiff must change position at will as well as the conclusion that Plaintiff was permanently unable to participate in a full workweek. (Tr. 30.) The ALJ found no objective support for these limitations and found them inconsistent with objective medical evidence in the record. *Id.* An ALJ may reject a physician's opinion that is inconsistent with the longitudinal record. *See Garrison*, 759 F.3d at 1012. Here, the ALJ noted that although Dr. Overholser endorsed limitations on standing, walking, bending and sitting, she found Plaintiff had no joint swelling, a normal range of motion, symmetric strength, and a normal gait. (Tr. 25, 657.) The

ALJ also noted that examining physician Raymond Nolan, M.D., Ph.D., found Plaintiff exhibited normal gait, strength, sensation, and reflexes. (Tr. 28, 763-64.) Dr. Nolan noted no edema and produced a negative fibromyalgia screening, which conflicts with Dr. Overholser's note that Plaintiff was being treated for fibromyalgia. *Id.* It was reasonable for the ALJ to resolve this apparent inconsistency in the record by rejecting the opinions of Dr. Overholser and Ms. Wheeler. *See Valentine*, 574 F.3d at 692. The ALJ therefore provided a specific and legitimate reason for rejecting Dr. Overholser and Ms. Wheeler's opinion. *Ghanim*, 763 F.3d at 1161; *Garrison*, 759 F.3d at 1012.

2. Paul Stolzfus, Psy.D.

Examining psychologist Dr. Stolzfus completed a psychodiagnostic evaluation of Plaintiff in February 2017. (Tr. 774-82.) He diagnosed generalized anxiety disorder, persistent depressive disorder, and PTSD traits. (Tr. 778.) Dr. Stolzfus also assessed moderate restrictions in Plaintiff's ability to interact appropriately with coworkers and marked limitations in her ability to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 781.)

The ALJ assigned some weight to Dr. Stolzfus's opinion but rejected the assessment of marked limitations in the ability to respond appropriately to usual work situations and changes in routine work settings because it was "not consistent with the evidence." (Tr. 30.) The ALJ may reject a physician's opinion on a claimant's level of impairment when it is unreasonable in light of other evidence in the record. *Morgan*, 169 F.3d at 601. Here, Dr. Stoltzfus noted that Plaintiff demonstrated an ability to interact normally, despite her statement that she wanted to avoid people. (Tr. 781.) Further, other treatment records revealed Plaintiff's ability to manage significant changes in her life, such as assuming guardianship of her three-year-old grandson. (Tr. 30, 778-79.) On this record, the ALJ provided a clear and convincing reason to reject part of Dr. Stoltzfus's

opinion. *Morgan*, 169 F.3d at 601; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (the ALJ may discount a medical opinion when it is inconsistent with the claimant's activities).

3. Raymond Nolan, M.D., Ph.D.

Dr. Nolan performed a consultative examination in February 2017 and opined that Plaintiff can occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and limited ability to crawl and operate foot controls. (Tr. 766-71.) Dr. Nolan's opinion was contradicted by the opinions of Drs. Berner and Bernardo who did not assess any limitations on Plaintiff's use of her feet. (Tr. 134-36, 168-70.) The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Nolan's opinion. *Ghanim*, 763 F.3d at 1161.

The ALJ rejected Dr. Nolan's limitation on Plaintiff's use of her feet because it was inconsistent with her reports of daily activities. (Tr. 30.) As noted, an ALJ may reject a physician's opinion that is contradicted by other evidence in the record. *Morgan*, 169 F.3d at 601. Here, the ALJ noted Plaintiff was able to perform activities such as bicycling and caring for her grandson, which indicate that her ability to use her feet was less limited than Dr. Nolan concluded. (Tr. 702, 713, 776.) On this record, the ALJ provided a specific, legitimate reason for rejecting Dr. Nolan's limitation on Plaintiff's use of her feet. *Ghanim*, 763 F.3d at 1161.

4. Dorothy Anderson, Ph.D., and Bill Hennings, Ph.D.

State Agency physicians Drs. Anderson and Hennings opined in 2014 that Plaintiff would be able to complete one-to-two-step tasks and have occasional contact with the public. (Tr. 136-38, 170-72.)

The ALJ failed to explain why she rejected the Agency physicians' limitation to one- to two-step tasks. (Tr. 31.) The Commissioner alleges this was harmless error because the Agency

physicians' opinion was inconsistent with additional evidence obtained at the hearing level. Specifically, the Commissioner notes that following a medication change in January 2015, Plaintiff's mental status findings were generally normal, and she presented with few abnormalities in January 2017. (Tr. 26, 662-64, 668, 710.) The Commissioner argues the court should find as harmless error the omission of one-to-two-step tasks from the RFC.

The court disagrees. Although the ALJ rejected other opinions rendered in 2014 because they were rendered without access to all of the relevant evidence, the ALJ explicitly rejected those opinions, making findings and explaining her conclusion. (Tr. 31.) By contrast, it is not clear from the ALJ's opinion that she intended to reject the limitations assessed by Drs. Anderson and Hennings. *See id.* Here, the ALJ explicitly considered the opinions of Drs. Anderson and Hennings in her written decision but neither accepted nor rejected them. *Id.* The ALJ nevertheless failed to include the one-to-two-step tasks limitation in the RFC. (Tr. 20.) Because the ALJ did not provide any reasons for rejecting the Agency physicians' opinion and failed to incorporate it into the RFC, the ALJ erred.

III. Lay Witness Testimony

Plaintiff next argues that the ALJ improperly rejected the lay opinion of Plaintiff's sister, Sheila S. The ALJ must provide germane reasons for rejecting the testimony of a lay witness. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Ms. S. completed a third-party function report detailing Plaintiff's symptoms and limitations. (Tr. 384-94.) She wrote that Plaintiff had severe physical and mental limitations that prevented her from performing full-time work. *Id.*

The ALJ rejected Ms. S's opinion because it was inconsistent with objective evidence in the record. (Tr. 31.) For example, while Ms. S. reported that Plaintiff had no interests or hobbies,

Plaintiff reported that she enjoyed sewing and engaged in her hobby about once per week. (Tr. 335-42.) Further, Ms. S.'s opinion that Plaintiff was limited in her ability to concentrate and use her hands was also contradicted by record evidence that Plaintiff was able to crochet, sew, go fishing, and learn to play the guitar. (Tr. 28, 747.) On this record, the ALJ provided a germane reason for rejecting the lay opinion of Ms. S. *Bayliss*, 427 F.3d at 1218.

IV. RFC

Plaintiff argues, finally, that the ALJ erred because she presented an incomplete hypothetical to the VE and therefore was not entitled to rely on his testimony in her step four and five findings. Because the ALJ failed to incorporate the limitation to one-to-two-step tasks into the RFC, she presented an incomplete hypothetical to the VE. The ALJ's step four and five findings were therefore not supported by substantial evidence.

*Remand*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harmen v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the ALJ erred by failing to incorporate Dr. Hennings's and Dr. Anderson's limitations to one-to-two-step tasks into the RFC. On remand, the ALJ should be given the opportunity to resolve the outstanding conflicts in the record, formulate a correct RFC, and, if necessary, take new testimony from a VE regarding whether there are jobs in the national economy Plaintiff can perform. Because there are outstanding issues that must be resolve before a finding of disability can be made, this case is reversed and remanded for further proceedings consistent with this opinion.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's applications for SSI and DIB is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 16th day of September, 2019.

JOHN V. ACOSTA
United States Magistrate Judge